Good morning, Your Honor. May it please the Court? My name is Candace Toole and I represent appellants. This case belongs in arbitration. In my time this morning, I would like to cover two topics. First, that Mobile Messenger is entitled to enforce the arbitration provision in the contract between Ms. Wells and Powell Mobile as a third-party beneficiary. And second, that this Court should instruct the District Court on remand to compel arbitration. Now, Mobile Messenger is a third-party beneficiary of Ms. Wells' agreement with Powell Mobile because in all caps, at the beginning of that agreement, it states, these terms include a waiver of claims by you against your wireless carrier or company's suppliers. And that's at ER-362. Now, this waiver provision, the waiver provision later in that agreement repeats this warning. So that's not a waiver provision, right? No, it's a warning that a waiver provision is contained in the agreement. A few paragraphs later... How is that a warning? I'm sorry, Your Honor. I'm sorry. How is that a warning that a waiver provision is coming? It states that the terms of this agreement include a waiver of claims by you against company suppliers. And a little bit later in the agreement, there is a waiver provision that specifically states that by agreeing to the contract, you voluntarily, irrevocably, and unconditionally release your claims and your right to bring any type of lawsuit against, again, your wireless carrier and any of Powell Mobile's suppliers. Now here, there's really no dispute that Mobile Messenger is one of Powell Mobile's suppliers. Mobile Messenger supplied services to Powell Mobile that enabled the services that Ms. Wells signed up for in this case. It connected Powell Mobile to the wireless carriers and allowed the bills to be placed onto the wireless carrier bill and also allowed text messages to travel over the short code. Counselor, what's your best case on third-party access to this arbitration clause? Your Honor, Gibson versus Walmart stores a Tenth Circuit case, it's 181F3163. In that case, the Tenth Circuit held that a beneficiary of a very similar waiver provision was a third-party beneficiary of the contract entitled to enforce that contract to protect the valuable benefit that they had received under the contract, the benefit of not being sued in court. In fact... Is there any Washington state law on this? Not on whether a waiver provision can create a third-party beneficiary contract, but Washington law is very similar to other states on this common law topic of a direct obligation from a promisor to a third party. A third-party beneficiary is created, and that's what happened here. Ms. Wells promised not to sue Mobile Messenger, which is a Powell Mobile supplier, and that benefit flows directly from the contract to Mobile Messenger, creating a third-party beneficiary relationship under Washington law. That law has been stable for many years now. In fact, this court in Raja Gopalan versus Noteworld, which is the case the district court largely relied upon, stated the same rule, that if there is a direct benefit given to a third party, that creates a third-party beneficiary. Counsel, let me interject, if I may, please, just on a clarifying question. I can understand pretty well, I think, your argument that your client's an intended beneficiary because of the provision in the contract saying they waive claims. What I don't understand is how at this point, assuming we accept your argument on that, as opposed to your friend's argument, if we do that, how we could order the court to send it to arbitration when I thought there were fact issues, both as to whether the appellant had agreed to the terms, and also maybe on unconscionability. I don't think the district court reached those issues. You're right, Your Honor, that Judge Dilley did not need to reach that issue because he found that we were not entitled to enforce the contract. However, there's uncontroverted evidence confirmed from multiple sources that establishes that Ms. Wells did assent to the terms and conditions here. Now, when you sign up online, the best way to confirm someone's identity is to use something they know, like their phone number, and require that they be in possession of that phone. That allows you to have a double confirmation that the person is who they say they are before you bill them. That's exactly what was done here. Someone using Ms. Wells' IP address, that is the computer router at her house, entered her cell phone number into a PalMobile-controlled landing page that contained notifications about the service that was being purchased, the charges that would issue, and a hyperlink to the terms and conditions. They checked a box indicating that they accepted the terms and conditions and clicked Next, going to a second landing page. Ms. Wells' cell phone then received a text message, and the exact time of that message's receipt is confirmed both by PalMobile's business records and by AT&T's business records, which is Ms. Wells' cell phone carrier. That text message contained a unique four-digit PIN number. That PIN number was then entered into the landing page, and a second text message went to Ms. Wells' cell phone, again confirmed by AT&T's independent records. This would establish consent, is that what you're saying? Yes, Your Honor. But was there a finding of fact made by the trial court? The court did not need to reach that issue. However, it did speak several times to the weaknesses of Mr. Guyer's factual case, stating that the records seemed to suggest very strongly that there was an agreement at ER-7, and at ER-15, stating, I think the defendant makes a very strong case that the Hancock approach ought to be followed here. Now, that's a reference to Hancock v. AT&T, another Tenth Circuit case, which is 701 F. 3rd. 1248. In that case, the court held that a bare denial that someone visited, you know, the relevant website or in that case, clicked the assent button, was insufficient to create a contested issue of fact as to assent, when it is carefully worded to avoid actually contradicting any of those detailed facts I just read to you. In this case, Ms. Wells stated that she never visited the website, MobileBidAndWin.com, but the facts presented in the PalMobile declaration in the record do not state that she visited that website. It states that she clicked on an ad, was taken to a landing page with an entirely different address, and it is there that she entered her cell phone. Therefore, the declaration doesn't contradict this independent evidence from PalMobile and from AT&T. This could all have happened, I'm not saying this is what happened, just a hypothetical possibility. If somebody had her cell phone, they could have done this. If someone knew her cell phone number, was in possession of her cell phone, was in her house using her computer router, and then, after the second text message was received, entered her first and last name, her email address, and her home address into a webpage. Why would it have to have been from her home? The IP address belongs to Comcast in Longview, Washington, which is where the plaintiff lives, and it was used for all of these separate interactions. And the evidence shows that they entered her home address and email address using the same web browser and the same IP address, which is, again, the router that's in her house. And that is at ER. The router gets assigned an IP address by Comcast, and it's not a static IP address, it's a dynamic IP address, changes from time to time. How do we know that that is the IP address of the home? Well, in this case, it has been static for several years. Mobile Messenger's business records show that these... This is in the record? Yes. At ER 83... That Comcast assigned her the same IP address. I'm not arguing with you, I'm just... Yeah, so at ER 83, paragraphs 5 and 6, the evidence states that the same phone number using the same IP address was used in 2010 to sign up for a similar program. Okay. Let me ask you, you've got 22 seconds, but how do you read the interaction between paragraphs 11 and 12 of the agreement? The waiver and the arbitration clause? The waiver seems to say you're not going to bring any lawsuits. Well, it says you're not going to bring any lawsuits against wireless carriers and PalMobile suppliers, but you can bring claims against PalMobile itself, the party you're contracting with. Then the arbitration clause requires that those claims brought against PalMobile be taken to arbitration. I'm sorry, run that by me one more time. Sure. So you waive your claims... It says you're not going to bring any lawsuits against anybody. You're not going to bring any claims or lawsuits against your wireless carrier or PalMobile suppliers, but you can bring claims against PalMobile. Why don't you slow down? I'm sorry. Okay. I say potato and you say potahto. Just listen to what I am asking. Yes. Okay. And answer that question, not a different question. Yes, Your Honor. Absolutely. So you can bring claims against PalMobile under the waiver clause. You simply can't... That's not my question. Ask about lawsuits. Okay, so the... I said lawsuits, you said lawsuits or claims, but I don't want to talk about lawsuits or claims. I'm asking you specifically about lawsuits. Sure. The waiver clause does not speak to or doesn't waive lawsuits against PalMobile. It's the arbitration clause that states that rather than lawsuits, you need to bring your claims in arbitration. And it would be contradictory for the arbitration clause to... I have no idea what you just said. I have no idea. Maybe if you waited and listened to the question. Yeah. 11, paragraph 11 says you will not bring lawsuits, any lawsuits against... At least I quit. Against wireless carrier, which is what, AT&T? In this case, yes. ...or any of its suppliers or any other company. So it sounds to me like you can sue individuals, but you can't sue any company, anybody. Is that what it says? No, it says anyone other than PalMobile relating to the service. So you can still sue PalMobile. What does it say except PalMobile? That's the last sentence. So it says you cannot bring a lawsuit against your wireless carrier, any of company's suppliers, or anyone other than PalMobile relating to the service. Oh, I see. Company is... Is PalMobile. PalMobile. Okay. And how does that interact with 12? So 12 requires that those claims, rather than being brought in a lawsuit against PalMobile, be brought in arbitration. And it's limited to PalMobile because all the claims against PalMobile suppliers and the wireless carrier are waived by the previous paragraph. Okay. Thank you so much. Good morning. May it please the Court. Erica Nooser on behalf of Plaintiff Richard Geyer. Your Honors, it is undisputed the defendants are not signatories to the POW terms and conditions. It is also undisputed that the arbitration clause on its face applies to POW and POW's users and only to disputed claims between POW and POW's users. So how do you interpret the interaction between 11 and 12? Your Honor, I think first we have to look to the terms of the arbitration clause itself. That's what this Court instructs in Kramer. That's what this Court instructs in Mundy. And those are the two key cases that involve non-signatories. You're going to answer a different question than the one I asked. I apologize, Your Honor. So let's start. How do you read these two provisions? How do you read 11? What does 11 say? 11, I believe, cannot serve as the evidence of a third-party beneficiary relationship because as the District Court found— What does it say? What does it provide? Yes, Your Honor. As the District Court found, it says that it waives— I know what the District Court found. I'm asking you to tell me how you read it. It waives claims by suppliers. The problem with that wording, however, is suppliers— I'm sorry. So suppliers includes MQ? We would contend that it does not. This is why I'm asking you this question. So it says suppliers, but in your view, the suppliers does not include MQ? That is correct, Your Honor. Why is that? That's because in order to determine who suppliers are, we have to look at the intent of the parties. Here, the intent of the parties, that means both parties. That doesn't mean just what was POW's intent. We can assume maybe POW's intent was to include Mobile Messenger. We have to also look under Washington law to what a POW user's intent would be because that term's not defined in the contract. So can we assume that a consumer entering into a contract of adhesion to bid for auction items on their cell phone intended supplier to mean a third-party aggregator? I don't think that we can, Your Honor. I don't think an average consumer even knows what a third-party aggregator is. Let me interject a theory question, please, on the argument that you just made. Do you have any authority that says that if someone's an intended beneficiary of a contract that we look to the beneficiary's intent and a third party's intent in determining what was intended? Your Honor, we don't look to the third party's intent. The intent at issue is the intent between the contracting parties. So here we have to look to what is the intent of POW and what is the intent of a POW user. And importantly, the contract itself actually speaks to what the party's intent was with respect to third-party beneficiaries. And I discovered this in reading the contract again yesterday. If you look at paragraph 13 of the terms and conditions, that's at either page 201 or page 374 of the record. Paragraph 13 starts with this sentence. You understand and agree that except as expressly set forth herein, this agreement is not intended to confer and does not confer any rights or remedies upon any person other than the parties to this agreement. The party's intent regarding third-party beneficiary status is clearly spelled out in this contract. This really should end the inquiry as to whether or not defendants are third-party beneficiaries. Arguably, that's inconsistent with 11, is it not? And I think that that would then get us back to the argument of whether or not suppliers is a term that POW users could have intended to refer to Mobile Messenger and MQ. But that doesn't answer Judge O'Scanlon's question. Can you ask the question again? Well, I'm just asking and raising the issue as to whether that isn't inconsistent with paragraph 11. Because paragraph 11 clearly gives rights to people other than the parties. So no matter how you interpret this word supplier, it does seem to provide benefits to some class of people that are other than the parties. That was O'Scanlon's question. And my question now is, isn't that inconsistent with 13, when 13 says it provides no benefits to anybody other than the parties? I don't think it is inconsistent because I think that the benefit that's created by paragraph 11 is not a direct benefit. It's a benefit that does not arise. Well, it looks pretty direct to me. It says you waive all claim. You will not bring any lawsuits. I don't know. I can't imagine a better benefit. What's indirect or unclear about that? I think what's indirect and unclear about that is that it has no relation to the performance of the actual contract. The contract is for a bid and win auction site. Okay. So we have your having point of 13 and we have your answer to that. But I would like to get back to the question. I mean, I'm not sure I'm satisfied with the answer, but I think that's as good as we're going to get. Let's get back to the question of what does supplier mean. And your view is MQ, not MQ, I get these parties. The signatory would have meant this to include perhaps MQ. Perhaps. But not your client. Your client wouldn't have, right? That's correct, Your Honor. Assuming that that's the case, how does a court resolve that conflict? Well, under Washington law, both parties have to intend that result. And so if we can't find – We don't know what your client intended. We haven't had a – and what if there's a conflict between what they intend? That's an excellent question, Your Honor. The intent is – Well, thank you. Can I chalk that up as a little gold star next to my name? Absolutely. The intent is looked at from the perspective of the circumstances. And so that's why – it's an objective test. It's not a subjective test. Well, if you're looking at an objective test and not a subjective test, why doesn't this supplier take care of it? I mean, you know, clearly MQ v. Pelaya here. If that's where we're going with that. I think, again, because there's simply no evidence in the record that defendants are suppliers. And, in fact, that's what the district court found. And that factual finding is entitled to clear error. So the fact that – How can the district court make a finding like that when you have conceded that at least one party to this agreement meant to include MQ? How can the district court, without an evidentiary hearing, make a finding that's contrary to that? I don't think that an evidentiary hearing would need to occur with respect to third-party beneficiary status. And that is because it has to be both parties. It doesn't matter what Powell's intent was. Let's say they're contrary to your argument. We look at this and we conclude that, in fact, paragraph 11 does cover MQ. Moving on to the next step of the argument. So what follows from that? How does that interact with 12? What follows from that is then we need to look at whether or not that – what the defendants are saying is, look, if we look at the arbitration clause, we're not included in that. So we want to point to this other provision in the contract and say, this is evidence. This waiver provision is evidence that we're third-party beneficiaries. Well, that can't serve as the evidence that they're third-party beneficiaries because that waiver provision is invalid. Rather than phrasing things in the negative or refuting the argument, I'm asking you for your interpretation of the contract. So let's say we are now at the point in the contract where we have looked at it and assuming we say, yes, suppliers does, in fact, include MQ. Let's say that's where we are in the analysis. What's the next step? Don't tell me what's not, you know, why they are wrong. You tell me how to interpret this contract if that's where we are in the analysis. I think the analysis is, even if they are, they're still not entitled to enforce the waiver provision. And that is the arbitration provision. And that's because the arbitration provision is very clear as to who the parties to that provision are. The parties are POW and POW's users. The arbitration provision defines disputed claims as those between POW and POW's users. Okay. So what you're saying is 11 would act as a categorical bar against lawsuits against MQ but would not give arbitration as an alternative method of resolving any disputes. So this would just act as a total complete bar. You don't get to arbitrate. You don't get to go to court. You don't get to do anything. So once we've interpreted 11 as applying to MQ, the end of the matter is there's no claim. There's no place you can bring it. Is that what you're saying? Yes, I think that would be correct, except that then you have to get to deciding whether or not the waiver provision is valid and enforceable. And we would contend that it is a clear violation of the public policy of Washington to allow consumers to waive. It would be more plausible to say, you know, obviously the two are tied together, and what 11 and 12 are doing is saying you can't go to court, but we've got the alternative remedy of arbitration, and that would make the whole thing fair to avoid public policy questions. Why is that the correct answer? I think if that were the intent of the parties, we can see from the drafting that they knew how to put suppliers in the waiver provision. They didn't put that in the arbitration provision. So I think that we have to take— Absolutely, and this arbitration provision was drafted by the defendants. If they wanted to have been included in it, they could have included themselves, and they chose not to. Okay. I also want to direct your attention, the court's attention, to a case that the defendants actually cited in their reply brief at the district court level that actually is similar to the facts here. You're actually negative. Oh, I apologize. I saw the time here. That's okay. Go ahead and make your point quickly, and then sit. What provision are you talking about? So that is actually a district court case out of Louisiana called Tanner Company v. Reliable, and in that case the court found the third party was a third-party beneficiary but said even though they're a third-party beneficiary to the contract, they're not entitled to enforce the arbitration clause because the arbitration clause by its terms only applies to the parties, and I think that's exactly what we have here, Your Honor. Okay. Thank you. Is that case in your brief? It's actually in the defendant's reply, but I can give you the citation. It's 2008, Westlaw 148073. Thank you. I believe you're out of time. I'll give you a minute. We have a minute. Thank you. I just have a few quick points in rebuttal. First, the district court never found that Mobile Messenger or M-Cube were not suppliers. Indeed, at ER 37, lines 11 to 13, opposing counsel conceded that the court could assume Mobile Messenger was a supplier for the purposes of the motion to compel, and in their brief at 256 note 5, so that was their opposition to the motion to compel arbitration, they stated that defendants M-Cube and Mobile Messenger contracted with POW to supply support for the PSMS services at issue in this case. In addition, M-Cube appeared on Ms. Wells' phone bill, that's at ER 390, paragraph 5.22, of the first amended complaint. In addition, we do not believe that paragraph 13 of the POW-Mobile contract contradicts paragraph 11 because it does state, except as expressly set forth herein, therefore paragraph 11, the waiver clause, does or can provide third-party beneficiary status on Mobile Messenger. Finally, the validity of the waiver clause goes to the arbitrator in this case, as Buckeye check cashing teaches us. Even if the contract is void or voidable, the arbitrator decides in the first instance the validity of the waiver. Counsel, would you respond to your opposing counsel's argument that since supplier is not in the arbitration provision, it is not included? Well, Your Honor, it wouldn't make sense to include suppliers in the arbitration provision because the claims against the suppliers are supposed to be waived in paragraph 11, which precedes the arbitration clause in paragraph 12. It would be internally contradictory, and allowing them to bring lawsuits in violation of the waiver clause that would then not be covered by the arbitration clause would allow an end run around arbitration, which is favored by this court. I'm still not understanding your argument. I didn't understand it in your briefs. I don't quite understand it now. If you're saying you can't bring any claim, including an arbitration claim, against MQ, then why are you here asking for arbitration? Because the decision of whether the waiver clause can be enforced is a decision the arbitrator has to make in the first instance. Well, but the arbitrator has to have parties that are subject to arbitration, and 12 only makes parties to arbitration the company there and the subscriber, right? Not your client. Because the claims against our client were waived in the previous paragraph, and this is exactly the fact situation in Gibson versus Walmart stores, which I cited to you earlier. There, an employee waived claims against her co-employees and could only bring a lawsuit against Walmart, the employer. There was then a later arbitration clause that said that claims against Walmart needed to be arbitrated, and the court ordered arbitration against both the co-employee and Walmart, and then the arbitrator could determine the validity of the waiver clause. But in that case, a lawsuit was brought against Walmart. And the co-employee. Well, no, I understand, but it was brought against Walmart. Here they didn't make that mistake. Yes, exactly. They tried to do an end run around arbitration by not suing PalMobile, the company with whom they contracted. Or call it an end run, or you can call it smart pleading. It depends on whether it works, doesn't it? Your Honor, we've cited some cases in our briefs that explain that courts have disfavored that sort of creative pleading in order to avoid a clear arbitration clause, as was done here. Okay. Thank you. Thank you. The cases are, you will see, submitted. We'll take a brief recess.
judges: Kozinski, O'scannlain, Gould